# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAVON PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 1491 |
| | ) | |
| HOLLIS DORROUGH, JR., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motions for summary judgment. For the reasons stated below, the motions for summary judgment are granted in part and denied in part.

## BACKGROUND

Plaintiff Javon Patterson (Patterson) alleges that in January 2006, he was asked by an individual (Individual) to assist the Individual in stealing certain cocaine (Cocaine). Patterson contends that, although he refused to help the Individual, the Individual proceeded to steal the alleged Cocaine. According to Patterson, certain Defendants subsequently came looking for the alleged Cocaine and demanded that Patterson return the alleged Cocaine. Certain Defendants also allegedly threatened to

1

frame Patterson for a crime if he did not return the alleged Cocaine. Patterson contends that the Individual was found murdered on April 8, 2006, and that Defendants conspired to falsely accuse him of a crime and arrested him on April 24, 2006. Patterson further alleges that certain Defendants provided false information in order to further the criminal prosecution against Patterson. It is undisputed that Patterson was ultimately convicted and that he served almost two and a half years in prison before his conviction was reversed and Patterson was awarded a Certificate of Innocence. Patterson includes in his complaint claims alleging violations of his due process rights brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count I), Section 1983 unlawful arrest and detention claims (Count II), Section 1983 conspiracy claims (Count III), Section 1983 malicious prosecution claims (Count IV), a Section 1983 *Monell* claim (Count V), state law malicious prosecution claims (Count VI), abuse of process claims (Count VII), intentional infliction of emotional distress (IIED) claims (Count VIII), state law conspiracy claims (Count IX), and indemnification claims (Count X).

Defendant City of Harvey (City), Defendant Keith Price (Price), Defendant Eric Kellogg (Kellogg), Defendant Jonathan Cook (Cook), and Defendant Sam White (White) (collectively referred to as "Harvey Defendants") moved to dismiss Counts II-IV, VI-VII, and IX, as to certain Harvey Defendants. Defendant Detective Hollis Dorrough Jr. (Dorrough) moved to dismiss Counts I-IV and VI-IX. The court granted the motion to dismiss all claims brought against White. The court also granted the motion to dismiss all Section 1983 malicious prosecution claims. In

addition, the court denied the motion to dismiss the Section 1983 unlawful arrest and detention claims, the Section 1983 conspiracy claims, the state law conspiracy claims, the state law malicious prosecution claims, and the abuse of process claims brought against Kellogg, Price, Cook, and Dorrough. Finally, the court denied Dorrough's motion to dismiss the Section 1983 due process claim and the IIED claim brought against him.

Kellogg, Price, and Cook subsequently filed a counterclaim against Patterson and Robert M. Stephenson (Stephenson), who is one of Patterson's attorneys in the instant action. The counterclaim includes a defamation *per se* claim brought against Patterson (Count I), a defamation *per se* claim brought against Stephenson (Count II), a defamation *per quod* claim brought against Patterson (Count III), and a defamation *per quod* claim brought against Stephenson (Count IV). Counter-Defendants moved to dismiss all claims in the counterclaim, and on May 12, 2011, the motions to dismiss the counterclaim were granted. Defendants have now filed motions for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" of material fact in the context of a motion for summary judgment is

3

not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000).

**DISCUSSION**

I. Defendants' Challenge of Patterson's Evidence

Defendants' motions include several arguments challenging the evidence set forth by Patterson. Defendants argue, for example, that Patterson has not presented "credible evidence," and refer to what they believe is Patterson's "incredible deposition testimony." (Reply 3, 9). Defendants argue that the court should simply choose to disbelieve Patterson and that his deposition testimony should "not be considered." (Reply 3). However, Defendants have not shown Patterson's testimony to be factually impossible. Patterson's evidence consists of testimony as to events that he personally claims to have witnessed, such as his alleged meeting with Kellogg and Dorrough after his arrest, at which they allegedly demanded the return

of the Cocaine allegedly belonging to Kellogg and then allegedly threatened Patterson. Defendants also claim that Patterson has a criminal past and that certain criminal charges are currently being pursued against Patterson. Defendants indicate that Patterson is not a "choir boy." (Reply 39). However, even if Defendants are correct regarding the criminal record of Patterson or pending criminal charges, such facts, while perhaps relevant in this case, would not render Patterson's testimony in this case inadmissible.

In the instant motions, Defendants repeatedly challenge the evidence put forth by Patterson, which clearly indicates that resolution at the summary judgment stage would be improper. For example, in response to Patterson's contention that after he was arrested, Kellogg and Dorrough demanded the return of the alleged Cocaine and threatened Patterson, Defendants respond that Kellogg denies that the incident ever occurred. (R SAF Par. 14). Patterson also claims that he did not have a firearm at the time of his arrest and that other witnesses at the scene will corroborate his position. Defendants dispute Patterson's position and respond that Harris testified at his deposition that he recovered a firearm from the person of Patterson at the time of his arrest. (R SAF Par. 10). Defendants also present in the instant motion their version of events, which they contend shows that Patterson would have been arrested and prosecuted for reasons unrelated to the alleged misconduct. Defendants also indicate that the court should make inferences in their favor, arguing that Patterson's "factual assertions must be taken with a large 'grain of salt.'" (Reply 1). However, for a summary judgment motion, reasonable inferences are made in favor of the non-

5

movant, not the movant. Fed. R. Civ. P. 56. It is not proper at the summary judgment stage for a court to act as the trier of fact and resolve factual disputes. Defendants will be able to present their own evidence at trial and present arguments relating to the weaknesses they perceive in Patterson's evidence.

II. *Monell* Claim (Count V)

The City argues that Patterson has not pointed to sufficient evidence to support a *Monell* claim (Count V). In order to prevail on a Section 1983 claim brought against a municipal entity, a plaintiff must establish "the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chicago*, 690 F.3d 829, 833-34 (7th Cir. 2012)(quoting *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir.2007)). For a *Monell* claim, a plaintiff must point to sufficient evidence that establishes "(1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority." *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011)(quoting *Darchak v. City of Chi. Bd. of Educ.,* 580 F.3d 622, 629 (7th Cir. 2009)); *see also King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012)(stating that "[t]o survive summary judgment [the plaintiff] 'must present evidence demonstrating the existence of an official policy, widespread custom, or deliberate act of a county decision-maker of the municipality or department'") (quoting *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008)).

In the instant action, Patterson has not pointed to sufficient evidence of an express City policy or a widespread unwritten custom or practice underlying the alleged constitutional violations in this case. In addition, as to the third prong, although Patterson has pointed to some isolated actions allegedly made by Kellogg, Patterson has not shown that Kellogg made decisions relating to this case as a City official with final policy-making authority. *Milestone*, 665 F.3d at 780 (stating that whether an individual or entity "has final policymaking authority is a question of state or local law"); *see also Chicago United Industries, Ltd. v. City of Chicago*, 739 F. Supp.2d 1043, 1056 (N.D. Ill. 2010)(noting that "[b]oth the Supreme Court and the Seventh Circuit have explained that the pertinent inquiry is not whether an official is a policymaker on all matters for the municipality, but whether he is a policymaker 'in a particular area, or on a particular issue'")(quoting *Valentino v. Village of South Chicago Heights*, 575 F.3d 664, 676 (7th Cir. 2009)); *Valentino*, 575 F.3d at 676 (internal quotations omitted)(quoting *Randle v. City of Aurora,* 69 F.3d 441, 448 (10th Cir. 1995))(stating that in determining whether an official had final policymaking authority, a court should consider: "(1) whether the official is constrained by policies of other officials or legislative bodies; (2) whether the official's decision on the issue in question is subject to meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority"). Therefore, the City's motion for summary judgment on the *Monell* claim (Count V) is granted.

III. Section 1983 Due Process Claims (Count I)

Defendants argue that Patterson has not pointed to sufficient evidence to show that his due process rights were violated. Patterson indicates that his due process claim is based upon a failure to produce exculpatory evidence, as required pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). For a *Brady* claim, a plaintiff must establish: (1) that "the evidence at issue is favorable to the accused because it is either exculpatory or impeaching," (2) that "the evidence has been suppressed by the government, either willfully or inadvertently," and (3) that "the suppressed evidence resulted in prejudice." *Harris v. Kuba*, 486 F.3d 1010, 1014 (7th Cir. 2007)(internal quotations omitted)(quoting *United States v. O'Hara*, 301 F.3d 563, 569 (7th Cir. 2002)); *see also Whitlock v. Brueggemann*, 682 F.3d 567, 588 (7th Cir. 2012)(stating that "*Brady* and its progeny impose an obligation on state actors to disclose exculpatory evidence that is discovered before or during trial").

Defendants argue that Patterson has not pointed to sufficient evidence to show that exculpatory evidence was withheld from him, which is the essence of a *Brady* claim. Patterson contends that Defendants fabricated evidence against him. Defendants argue that Patterson, having personal knowledge of the events in question, would have been aware of any fabricated evidence presented against him and thus *Brady* is not implicated in this case. However, in *Manning v. Miller*, 355 F.3d 1028 (7th Cir. 2004), the Seventh Circuit made clear that a *Brady* claim can be

premised upon an attempt by police officers to frame a defendant for a crime by fabricating evidence. *Id.* at 1032-33. In this case, Patterson contends that, in addition to committing perjury and suborning perjury, the arresting officers fabricated evidence against Patterson. For example, Patterson contends that Defendants prepared false police reports which led to the prosecution and conviction of Patterson. Patterson indicates that he will offer testimony at trial regarding the falsity of the statements made by the arresting officers in their reports, which if believed by the trier of fact would constitute circumstantial evidence showing that the arresting officers fabricated evidence against Patterson. If Patterson is able to establish that point at trial, it is undisputed that the arresting officers never informed the prosecutor that the police reports in the criminal case brought against Patterson contained false information. Whether Patterson can point to sufficient evidence to show that Defendants fabricated evidence against him, such that Defendants' actions would constitute a withholding of exculpatory evidence under *Brady*, will be an issue for the trier of fact to decide. Therefore, Defendants' motions for summary judgment on the Section 1983 due process claims (Count I) are denied.

IV. Section 1983 False Arrest and Detention Claims (Count II)

Defendants argue that the Section 1983 false arrest and detention claims are time-barred. The statute of limitations for Section 1983 claims in Illinois is two years. *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). In the instant action,

Patterson contends he was arrested in April 2006. Patterson brought the instant action in March 2010. Patterson concedes in response to Defendants' motions that the Section 1983 false arrest and detention claims are time-barred. (Ans. SJ 8). Therefore, Defendants' motions for summary judgment on the Section 1983 false arrest and detention claims (Count II) are granted.

V. Malicious Prosecution Claims

Defendants argue that the state law malicious prosecution claims are time-barred. However, Defendants failed to include a statute of limitations defense for the state law claims in their answers to the complaint, and the court has already addressed Defendants' desire to raise this untimely defense. During discovery, Defendants filed a joint motion to amend their answers to add a statute of limitations affirmative defense in regard to certain state law claims. On July 24, 2012, the court denied the motion to amend, finding that the motion, which was brought after the close of discovery and just prior to the filing of dispositive motions, was untimely. The court also concluded that to raise the new defense at that untimely juncture would unfairly prejudice Patterson, and that there was not sufficient justification present for failing to raise the defense in a timely fashion. Thus, the court has already dealt with this issue and, to the extent that Defendants seek a reconsideration, the motion is denied.

Defendants also argue that Patterson has not pointed to sufficient evidence to

support the malicious prosecution claim. For a malicious prosecution claim brought under Illinois law, a plaintiff must show: "'(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff.'" *Holland v. City of Chicago*, 643 F.3d 248, 254 (7th Cir. 2011)(quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). Defendants argue that none of them actually signed a criminal complaint against Patterson. However, there is sufficient circumstantial evidence showing involvement by Defendants in the prosecution of Patterson, such as that Defendants allegedly provided false testimony at Patterson's trial. The law does not require Defendants to have personally led the prosecution of Patterson. Patterson need only show that there is "a causal connection between the defendant's actions and the filing of the charges," and liability "extends to all persons who played a significant role in causing the prosecution of" Patterson. *Frye v. O'Neill*, 520 N.E.2d 1233, 1242-43 (Ill. App. Ct. 1988)(stating that "[l]iability for malicious criminal prosecution is not confined to situations where the defendant signed a complaint against the plaintiff"). Patterson has pointed to sufficient circumstantial evidence relating to the alleged conspiracy to frame him for a crime he did not commit, and the trier of fact must resolve whether Defendants played a significant role in causing the prosecution of Patterson.

Defendants further argue that there was no malice involved in Patterson's

11

arrest and that his arrest involved nothing more "than normal, routine police work." (Cook Mem SJ 12). However, in presenting such an argument, Defendants simply fail to acknowledge that Patterson intends to present evidence to show that Defendants attempted to frame him for a crime he did not commit, which is not routine police work. Finally, Defendants argue that Patterson's case was not dismissed in a manner indicative of innocence. Defendants argue that the "mere dismissal of charges is not enough. . . ." (Cook SJ 12). However, the charges against Patterson were not simply dropped by the prosecutor. The City pursued the charges against Patterson until a conviction was obtained. On appeal, Patterson's conviction was reversed. In addition, Patterson was subsequently issued a certificate of innocence. Patterson has pointed to sufficient evidence to proceed to trial on this element of the malicious prosecution claims. Therefore, Defendants' motions for summary judgment on state law malicious prosecution claims are denied.

VI. Abuse of Process Claims (Count VI)

Defendants argue that Patterson has not pointed to sufficient evidence to support his state law abuse of process claims. For an abuse of process claim brought under Illinois law, a plaintiff must establish "the existence of an ulterior purpose or motive and some act in the use of legal process not proper in the regular prosecution of the proceedings." *Reed v. Doctor's Associates, Inc.*, 824 N.E.2d 1198, 1206-07 (Ill. App. Ct. 2005). The mere fact that proceedings were initiated against the

plaintiff, "even with a malicious intent or motive, does not alone constitute abuse of process." *Id.* (stating that "[i]n other words, the defendant must have intended to use the action to accomplish some result that could not be accomplished through the suit itself"). Defendants argue that there is no evidence that Defendants initiated legal proceedings against Patterson to recover the alleged Cocaine in those proceedings, and thus Defendants could not have attempted to use the legal process to further their objectives. However, Defendants' argument is not persuasive. Patterson does not seem to allege that Defendants would have sought to recover the alleged Cocaine in the criminal proceeding brought against Patterson. Rather, Patterson contends that Defendants attempted to utilize the criminal action brought against Patterson to punish him for failing to assist in the recovery of the alleged Cocaine and to possibly coerce him to change his mind and cooperate with Defendants. Such actions, if true, would suffice for an abuse of process claim.

Defendants also argue that they have evidence that they claim shows that Patterson was legitimately arrested based upon a 911 call by Patterson's neighbor, and Defendants contend that Patterson's allegations relating to Kellogg are "fictitious." (K SJ 5). Defendants argue that the evidence of the 911 call shows that they did not engage in conduct that involved an abuse of the legal process. At trial, Defendants will be able to present the evidence that they believe shows that Patterson's arrest was legitimate, as opposed to an alleged attempt by Kellogg to recover the alleged Cocaine. Patterson will be able to present the evidence that he

13

believes shows that the 911 caller was a liar and played a role in the scheme to unlawfully arrest Patterson. (Ans. SJ 39). The court cannot weigh such conflicting evidence and resolve factual disputes at the summary judgment stage. That is the role of the jury.

Defendants also contend that there is no evidence that Kellogg personally took part in the prosecution of Patterson. However, reasonable inferences are to be made in favor of Patterson at this juncture, not in favor of Defendants, the movants. Based upon the evidence Patterson intends to present concerning the various Defendants' involvement in the alleged attempt to recover the alleged Cocaine, the threats allegedly made against Patterson, and Patterson's subsequent prosecution, it will be up to the jury to decide if there is sufficient evidence to hold any or all Defendants liable for an abuse of process.

Kellogg also argues in his motion for summary judgment that the abuse of process claims are untimely. However, as indicated above, the court has foreclosed Defendants from raising that new defense at this late juncture in these proceedings. Therefore, Defendants' motions for summary judgment on the abuse of process claims are denied.

VII. Section 1983 and State Law Conspiracy Claims (Counts III and IX)

Defendants argue that there is not sufficient evidence to support the conspiracy claims. Defendants argue that "[n]othing in the record . . . supports

. . . [the] conclusory allegation regarding the existence of any agreement or conspiracy amongst any of the Defendants." (D SJ 6). However, in making such an argument, Defendants ignore the evidence that Patterson indicates he will present at trial. (Ans. SJ 10-14). Defendants also inappropriately seek to have the court draw inferences in their favor, to accept certain evidence put forth by them, and to discount the value of certain evidence put forth by Patterson. As discussed above, Defendants argue that there is evidence of a dispatch call that led to the arrest of Patterson. However, while that may be what the police records show as the reason why police went to Patterson's residence, it will be up to the jury to decide whether, based on the evidence also presented by Patterson, the official reports match up with what really occurred. At the summary judgment stage, the court does not act as a trier of fact. A case must proceed to trial unless no reasonable trier of fact could find in Patterson's favor.

Defendants also point out that there is no direct evidence tying Defendants to a conspiracy. However, a plaintiff can prove his case through circumstantial evidence, and Patterson has pointed to sufficient circumstantial evidence to proceed to trial on his conspiracy claims. Patterson has shown that he will present facts circumstantially tying the actors in the alleged conspiracy together in a common purpose and such evidence would permit a jury to infer the existence of an agreement among the conspirators. Patterson indicates he will present his own eyewitness testimony concerning the alleged visit to his residence by Dorrough and Price to recover the

15

alleged Cocaine and the alleged threats to Patterson and his family.  Patterson also contends that he was subsequently arrested and taken to the police station, where Kellogg and Dorrough personally spoke to Patterson, demanded the return of the alleged Cocaine, and indicated that they would frame him for a crime he did not commit if he did not return the alleged Cocaine.  Subsequently, the arresting officers charged Patterson with possession of a firearm, although Patterson claims he did not possess a firearm.

With respect to the 911 call, Defendants claim that Brenda Simmons (Simmons) independently made a 911 call to make a legitimate complaint about Patterson.  (Reply 13); (SF Par. 32-37).  However, Patterson contends that Kellogg and Price had connections to Simmons.  Patterson indicates in his statement of material facts that: (1) Price is an acquaintance of Simmons and Simmons' boyfriend, (2) that Kellogg came to Simmons' residence on multiple occasions "to say hello," (3) that some time after Patterson's arrest, Kellogg told Simmons about a dispatcher job with the police department, and that Simmons was hired for the job, and (4) that Kellogg's son and Price grew up with Simmons' boyfriend.  (SAF Par. 31, 34-35, 40).  Defendants respond to such facts, not by denying them, but instead by merely indicating that they admit that Simmons testified to such facts at her deposition.  (SAF Par. 31, 34-35, 40).  In addition, Defendants fail to cite to evidence to dispute any such facts, and such facts are therefore deemed to be undisputed pursuant to Local Rule 56.1.  LR 56.1.  Defendants also admit that Harris, who

16

Defendants contend merely responded to a legitimate 911 call when he went to Patterson's residence, had previously worked on Kellogg's bodyguard detail. (R SAF Par. 12). Based on such facts, Patterson has pointed to sufficient evidence such that the conspiracy claims should be presented to the trier of fact.

Defendants also argue that the state law conspiracy claims are duplicative of the other state law claims. Under Illinois law, "[a] civil conspiracy involves two or more persons who combine for the purpose of accomplishing by concerted action either (1) a lawful purpose by unlawful means, or (2) an unlawful purpose by lawful means." *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 329-30 (Ill. 1990). Under Illinois law, if a plaintiff alleges "a tort as the underlying wrongful act" for a state law conspiracy claim, and the underlying tort is already pled by the plaintiff in the case, the civil conspiracy claim is duplicative. *Tamburo v. Dworkin*, 2010 WL 5476780, at *9 (N.D. Ill. 2010)(internal quotations omitted)(quoting *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.*, 940 F.Supp. 1300, 1310 (N.D. Ill. 1996) and citing *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir. 1982)). In the instant action, the same underlying state law torts are the basis for the state law civil conspiracy claims. Thus, the state law civil conspiracy claims are duplicative. Therefore, Defendants' motions for summary judgment on the federal conspiracy claims are denied, but Defendants' motions for summary judgment on the state law civil conspiracy claims are granted.

VIII. Intentional Infliction of Emotional Distress Claims (Count VII)

Defendants argue that Patterson has not pointed to sufficient evidence to support an IIED claim. For an Illinois IIED claim, a plaintiff must establish "that the defendants, by extreme or outrageous conduct, intentionally or recklessly caused him severe emotional distress." *Parish v. City of Elkhart*, 614 F.3d 677, 683 (7th Cir. 2010). In the instant motions, Defendants question whether Patterson actually suffered severe emotional distress and refer to Patterson's claims about distress as "self-serving." (Reply 32); (K SJ 9). However, as previously discussed, it is not appropriate at this juncture to resolve disputed facts. Defendants also argue that Patterson has not produced medical evidence to support his claims of severe emotional distress. While medical evidence can be used to prove an IIED claim, there is no categorical rule under Illinois law that would limit Patterson to producing medical evidence to support his IIED claim. *See, e.g., Adams v. Sussman & Hertzberg, Ltd.*, 684 N.E.2d 935, 942 (Ill. App. Ct. 1997)(explaining that "[a]ctionable distress is that which is so severe that no reasonable person could be expected to endure it" and that a plaintiff must produce "evidence to show the severity of the distress he suffered, *i.e.,* that he was hospitalized, sought and received psychiatric treatment, or even was prescribed medication"); *Ponticiello v. Aramark Uniform and Career Apparel Services, Inc.*, 2006 WL 2699416, at *13 (N.D. Ill. 2006)(indicating that generally, medical evidence can be used by a plaintiff to establish severe emotional distress). It will be for the trier of fact to decide

Patterson's credibility and to decide whether there is sufficient evidence for the IIED claims.

Defendants also question whether there is evidence of extreme and outrageous misconduct in this case. Patterson has indicated that he will offer evidence showing that Defendants, including the Mayor and an alderman of the City, conspired to have him framed for a crime he did not commit. Such actions, if established, would be beyond "all bounds of decency and be considered intolerable in a civilized community," and would constitute extreme and outrageous conduct. *Fox v. Hayes*, 600 F.3d 819, 842 (7th Cir. 2010)(internal quotations omitted)(quoting *Lopez v. City of Chi.,* 464 F.3d 711, 721 (7th Cir. 2006)). Kellogg also argues in his motion for summary judgment that the IIED claims are untimely. However, as indicated above, this court has already denied Defendants' motion to amend their answers to include such a defense. Therefore, Defendants' motions for summary judgment on the IIED claims are denied.

IV.  Indemnification Claim (Count X)

Defendants argue that the indemnification claim is unsupported by the evidence in this case. Pursuant to 745 ILCS 10/2-109, "[a] local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." *Id.* The City argues that no individual Defendants who are employees of the City are liable to Patterson and therefore, Patterson cannot succeed

19

on the indemnification claim against the City. However, as indicated above, whether Defendants are liable for certain underlying torts involves genuinely disputed facts that must be resolved by the trier of fact. Therefore, at this juncture, Defendants' motion for summary judgment on the indemnification claim (Count X) is denied.

## CONCLUSION

Based on the foregoing analysis, Defendants' motions for summary judgment on the Section 1983 due process claims, the state law malicious prosecution claims, the state law abuse of process claims, the federal conspiracy claims, the IIED claims, and the indemnification claim are denied. Defendants' motions for summary judgment on the *Monell* claim, the false arrest and detention claims, and the state law civil conspiracy claims are granted. Patterson has also filed a motion to strike portions of Defendants' reply brief and reply to Patterson's response to Defendants' statement of fact. The court is cognizant of Local Rule 56.1 and has applied the local rule without need of additional briefing by the parties. Therefore, Patterson's motion to strike is denied as moot.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 31, 2012